UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MATTEL, INC., and
FISHER-PRICE, INC.,

                      Plaintiffs,

**Hon. Hugh B. Scott**

06CV807A

v.

**Order**

RAND INTERNATIONAL LEISURE
PRODUCTS, LTD.,

                      Defendant.

Before the Court is plaintiffs' motion to compel (Docket No. 29[1]). Responses to that motion were due on or before September 11, 2008, with any reply, due on or before September 25, 2008 (Docket No. 31, Order at 2). Defendant duly filed its timely response and cross moved to compel (Docket No. 35). Response to defendant's motion (as well as reply to plaintiffs' motions) were due by October 7, 2008, and both motions were deemed submitted without oral argument on October 7, 2008 (Docket No. 36).

BACKGROUND

This is a trademark and copyright infringement and common law unfair competition action regarding toy ride-on quad vehicles. The plaintiffs claim trade dress infringement and

---

[1] In support of their motion, plaintiffs submitted the affirmation of counsel (with exhibits), memorandum of law, and proposed Order, Docket No. 29, plaintiffs' reply in support of their motion and in opposition to defendant's, Docket No. 37.
    In opposition, and in support of its cross motion, defendant submitted its attorney's declaration (with exhibits), and memorandum of law, Docket No. 35. Also considered is defense counsel's letter to chambers of September 19, 2008, limiting the relief sought.

copyright infringement of their "'LIL QUAD" battery powered ride-on quad vehicles under their POWERWHEELS® brand, bearing the Nickelodeon channel characters Dora the Explorer and Diego. Plaintiffs allege that defendant's "POWER QUAD" bearing the indicia of Marvel Comics' Spider-Man infringes on their 'LIL QUAD design and claims that defendant has been selling these infringing 'LIL QUAD toys since 2006. (See Docket No. 29, Pls. Memo. at 2; see generally Docket No. 1, Compl.)

On October 30, 2007, plaintiffs served their Interrogatories and requests for production (id. at 3; Docket No. 29, Kane Decl. ¶ 2, Exs. A (Interrogatories), B (requests for production)). After over three months (including repeated requests for a response), defendant served plaintiff with its discovery responses (Docket No. 29, Pls. Memo. at 3; Docket No. 29, Kane Decl. ¶¶ 3-4, 5, Exs. C, D, E (Interrogatory responses), F (document production responses)). On February 15, 2008, plaintiffs wrote to defendant about the deficiencies in defendant's production, outlining several non-responsive Interrogatory responses and categories of documents not produced (id.; Docket No. 29, Kane Decl. ¶ 6, Ex. G).

Defendant basically responded with information about the Spider-Man POWER QUAD. Plaintiffs allege that defendant infringes on their LIL QUAD mark with other toys (for example POWER QUAD toys with Strawberry Shortcake, Ninja, and Marvel Heroes trade dress) and defendant thus needs to supplement its production as to these other toys (see Docket No. 29, Kane Decl., Ex. G, at 1-3). Interrogatory Number 8 sought defendant to identify which part of the LIL QUAD design was functional or otherwise not protectable by copyrights, but defendant objected that it was premature since it had not examined plaintiffs' products (Docket No. 29, Kane Decl., Ex. A, Interrog. No. 8; Docket No. 29, Kane Decl., Ex. G at 3-4). Plaintiffs sought

documents regarding defendant's distribution of the POWER QUAD toys, the costs to produce, documents regarding adverting and marketing of these toys, and communications with retailers about advertising and about this action (Docket No. 29, Kane Decl., Ex. G, at 4-5).

Defendant responded on February 28, 2008, with production of some documents and the promise of additional materials (Docket No. 29, Kane Decl. ¶ 7, Ex. H; Docket No. 29, Pls. Memo. at 3). Plaintiffs wrote on April 10, 2008, to obtain these additional documents (Docket No. 29, Pls. Memo. at 3-4; Docket No. 29, Kane Decl. ¶ 8, Ex. I). On April 14, 2008, defendant made a point-by-point refutation of plaintiffs' February 15, 2008, letter (Docket No. 29, Kane Decl. ¶ 9, Ex. J).

Plaintiffs reviewed this latest letter and documents produced with it and still found deficiencies (Docket No. 29, Pls. Memo. at 4). On May 13, 2008, plaintiffs sent a second deficiency letter (Docket No. 29, Kane Decl. ¶ 10, Ex. K; Docket No. 29, Pls. Memo. at 4), also enclosing a portion of plaintiffs' own discovery responses. Plaintiffs noted that defendant failed to identify all versions of the POWER QUAD toy (Docket No. 29, Kane Decl., Ex. K). Defendant responded on June 4, 2008 (id., Ex. M).

Plaintiffs repeatedly offered to call defendant to discuss this discovery dispute, but defendant resisted, wishing to resolve it on papers (e.g., Docket No. 29, Kane Decl., Ex. O).

*Plaintiffs' Motion to Compel*

Plaintiffs seek defendant to supplement its Interrogatory answers and produce documents responsive to plaintiffs' demands, and to do so no later than fifteen days from entry of this Order (Docket No. 29, Pls. Memo. at 1; Docket No. 29, Proposed Order). Plaintiffs move to compel supplementation of defendant's response regarding the versions of the POWER QUAD toy

(Interrogatory No. 1), defendant's familiarity with POWERWHEELS® toys (Interrogatory No. 3), defendant's monthly revenue and profits derived from sales of the POWER QUAD line (Interrogatory No. 5), and identification of the functional or non-protected parts of the 'LIL QUAD (Interrogatory No. 8) (Docket No. 29, Pls. Memo. at 5-8). They also seek documents on defendant's profit margin from the POWER QUAD line (Document Request No. 4), the cost or expense incurred by defendant in connection with the sale of POWER QUADs (Document Request No. 5), documents relating to the design of any version of the POWER QUAD (Document Request No. 16), documents relating to design or packaging similar to plaintiff Mattel's (Document Request No. 20), defendant's advertising and marketing of the POWER QUAD (Document Request No. 23), samples of labels, containers, packaging, marketing, advertising and the like for the POWER QUAD in this country (Document Request No. 25), communications with retailers referring or related to this action (Document Request No. 36), and communications with retailers regarding advertising products in the POWER QUAD line (Document Request No. 38) (id. at 8-11; see Docket No. 29, Kane Decl. Ex. B).

    In its Answer (Docket No. 9; see Docket No. 35, Mitchell Decl. Ex. 1), defendant denies that plaintiffs' claimed trade dress is protectable under the United States Trademark Act, or that the Complaint alleges that "POWER QUAD" infringes the trademark "'LIL QUAD" (Docket No. 35, Def. Memo. at 2-3 & nn.2, 3). Defendant contends that it responded to every written objection sent by plaintiff (see Docket No. 35, Def. Memo. at 3). Defendant contends that its responses were sufficient and plaintiffs' insistence is either misunderstands the facts or law (Docket No. 35, Def. Memo. at 4). On Interrogatory No. 1, defendant argues that plaintiffs merely are unhappy with defendant's answer. Defendant purchased the design for the toy at issue

and that other character licensed toys similar to it were produced to them (id. at 5). As for Interrogatory No. 3, defendant argues that the question is overbroad, including toys similar to plaintiffs' 'LIL QUAD from their POWERWHEELS® line (id. at 6-7). As for Interrogatory No. 5, defendant contends that plaintiffs have not shown how defendant's sales after it modified its toys were relevant to have discovery of the profits and costs from those sales produced (id. at 7). On Interrogatory No. 8, defendant objects to identifying the functionality since it believes that plaintiff has not stated a claim in which functionality would be relevant. Defendant asserts in its Answer and in response to this motion to compel that plaintiffs did not allege a trade dress claim (which would have functionality as a concept) and copyright law (claimed by plaintiffs) does not have a concept of functionality (id. at 8-9). Defendant argues that "plaintiffs' unadorned electric ride-on quad vehicle is a 'useful article' which is not protectable under the U.S. Copyright Law. See 17 U.S.C. § 101" (id. at 9-10).

    As for the document requests, defendant first argues that plaintiffs failed to object to defendant's production (id. at 11, regarding plaintiffs' document request 4, 5, and 16). Defendant offered to have plaintiffs inspect and copy original documents but plaintiffs never accepted that offer (id. at 12; Docket No. 35, Mitchell Decl. ¶ 11). Defendant characterize document request No. 20 as a "kitchen sink" request, a "fishing expedition," which defendant reformulated to be more precise and concludes that it does not have any responsive materials (Docket No. 35, Def. Memo. at 12-13). As for two of the disputed document requests (Nos. 23 and 38), defendant contends that it does not engage in advertising and hence does not have responsive documents for these requests or will produce such responsive documents it has in its custody or control (id. at 13, 14). As for Document Request No. 25, defendant offered to

5

produce photocopies of packaging and again denies that it engages in advertising to have other, responsive documents plaintiffs seek (id. at 13).  Finally, defendant offers to produce responsive documents in its control for Document Request No. 36 (id.).

    In reply, plaintiffs contend that plaintiffs attempted to meet and confer with defendant to discuss these issues to no avail (Docket No. 37, Pls. Reply at 1).  As for Interrogatory No. 1, plaintiffs want to determine if defendant produced all models of the POWER QUAD toys (id. at 2).  As for Interrogatory No. 3, plaintiffs reply that defendant still had to produce despite purchasing the design rather than creating it themselves (id. at 2-3).  On Interrogatory No. 5, plaintiffs contend that the post-redesign profits and costs are relevant for determining the marketplace and the lack of functionality (id. at 3).  As for Interrogatory No. 8, plaintiffs claim that "toys," such as the POWERWHEELS®, are not "useful articles" under the Copyright Law and that defendant's dispute about the scope of plaintiffs' claims are not properly addressed in a motion to compel (id. at 3-4).  As for Document Requests Nos. 4 and 5, plaintiffs reply that defendant only provided partial information, giving the net price without cost information for some product lines (id. at 4).  As for Document Request No. 16, plaintiffs claim that defendant did not produce any documents responsive to that request and, when defendant claims it created only the packaging for the toys, did not produce all documents relating to the design of that packaging (id.).  Regarding Document Request No. 20, plaintiffs seek correspondence defendant had with third parties regarding the similarity of defendant's goods with plaintiffs' goods (and not just the toy line at issue), as evidence of possible mimicry and bad faith in adopting the POWER QUAD design (id. at 5).  On Document Request No. 23, plaintiffs believe that documents regarding sales activity for the POWER QUAD line exists and defendant ought to

produce it (id.). Finally, as for Document Request No. 25, defendant only produced photocopies from some POWER QUAD products rather than all of its POWER QUAD products as sought by plaintiffs (id.).

The parties then jointly moved to amend the Scheduling Order (and adjourn a settlement conference) while this discovery dispute was pending (Docket No. 30; see Docket Nos. 31 (Second Amended Scheduling Order granting this joint motion), 38 (order further adjourning the settlement conference)).

*Defendant's Cross Motion to Compel*

Defendant originally cross moved to compel plaintiffs to disclose whether documents were withheld based on their objections to defendant's demands, to produce further responsive documents, and to verify answers to Interrogatories (Docket No. 35, Notice of Motion). Defense counsel later wrote to the Court (letter of Glenn Mitchell, Esq., to Chambers, Sept. 19, 2008) and stated that two requests (verified answers to Interrogatories and produce further responsive documents) were being dropped because plaintiffs apparently answered these outstanding requests. The remaining issue is thus plaintiffs' withholding of documents on objections.

Defendant served its document requests and Interrogatories upon plaintiffs on or about February 19, 2008 (Docket No. 35, Mitchell Decl. ¶ 3), and plaintiffs responded on or about March 31, 2008 (id. ¶ 4, Exs. 2, 3). Defendant contends that plaintiffs objected to virtually every demand and Interrogatory (id. ¶ 5). Plaintiffs then made their document production on May 13, 2008, but did not arrange their production by request or Interrogatory (id.). Defendant was not sure plaintiffs would withhold production based upon these objections, so defendant wrote to plaintiffs' counsel on April 14, 2008, requesting plaintiffs' position on this production issue (id.

¶ 7; see Docket No. 29, Kane Decl. Ex. J at 4). According to defendant, plaintiffs had not responded to that request or three latter written similar requests for this information (Docket No. 35, Mitchell Decl. ¶ 7; Docket No. 29, Kane Decl., Exs. L, M, O). Plaintiff submitted unverified responses to defendant's Interrogatories and three months later sent copies of the verification but not the original (Docket No. 35, Mitchell Decl. ¶ 8). In February 2008, plaintiffs promised to produce documents (that were being bates-stamped) but to date have not produced them (id. ¶ 9).

Defendant offered to produce for inspection various items, such as packaging, but plaintiffs have not requested an opportunity to do so (id. ¶ 11).

As stated earlier, defendant later received the verified answers to its Interrogatories and the documents sought (and represented by plaintiffs would be produced) since July 24, 2008 (Mitchell letter to Chambers, Sept. 19, 2008), defendant's only remaining issue is seeking an Order to compel plaintiffs to advise defendant as to whether they are withholding documents based on their objections and, if so, which documents are being withheld (id.).

Plaintiffs contend that defendant's motion is a "tit-for-tat" for their motion and that defendant made no attempt to meet and confer prior to filing its motion (Docket No. 37, Pl. Reply at 5-6). Regarding the remaining issue in defendant's motion, plaintiff states that defendant does not identify which objections plaintiffs made cause defendant's concern; this fault could have been remedied by the parties conferring (id. at 6).

DISCUSSION

I.  Standard

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention.  See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter."  Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).  Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention.  Fed. R. Civ. P. 37(a)(2)(A).

II.  Application

Here, both sides seek the other to produce and both claim that good faith attempts were made to confer before making their respective motions.  Although both sides exchanged letters and e-mails raising their objections and concerns, defendant resisted plaintiffs' attempts to confer by telephone or meeting to resolve plaintiffs' issues (see Docket No. 29, Kane Decl., Ex. O;

Docket No. 37, Pl. Reply at 5). Had they done so, many of these issues could have been resolved by the parties and the remaining issues (for example, which documents plaintiffs refused to produce due to stated objections) more narrowly focused for judicial determination.

    A.      Plaintiffs' Motion

Plaintiffs seek production about all versions of defendant's product and its marketing and the costs, revenues, and profits defendant has for its POWER QUAD line.

          1.      Interrogatories

At issue with the disputed Interrogatory responses is whether they were sufficient, first comparing the Interrogatories (Docket No. 29, Kane Decl., Ex. A) with defendant's response (id., Ex. E) and subsequent correspondence in the moving papers. Taking each disputed Interrogatory in order, defendant's response to No. 1 **is sufficient**, plaintiffs can depose defendant to determine if other toys exist that are similar to plaintiffs' product. As for No. 3, defendant's production for deposition of the employee responsible for packaging **is not enough**; others within defendant who agreed to purchase the design and to market it need to produce materials about defendant's knowledge of the POWERWHEELS line. Plaintiffs' inquiry in this Interrogatory is to identify those within or affiliated with defendant who were familiar with plaintiffs' design. As for Nos. 5 and 8, these Interrogatories involve the scope of plaintiffs' claims and (as defendant argues) claims plaintiffs either failed to raise or the materials sought are not applicable to the remaining claims. As plaintiff urges (Docket No. 37, Pl. Reply at 4), the scope of plaintiff's claims is not suitable for resolution in a motion to compel, but should be posed in a dispositive motion. Rule 26(b)(1) governs the scope of discovery and it includes "any nonprivileged matter that is relevant to any party's claim or defense"; while plaintiffs' trade dress and copyright claims exist,

10

defendant **must respond** to these Interrogatories, including in that response how inapplicable the concept of functionality may be to those claims.  Thus, plaintiffs' motion to compel answers to their Interrogatories is **granted in part, denied in part**.

        2.      Document Requests

Here, plaintiffs seek documents on defendant's similar products, products after changing the design, and communication defendant had with third parties about the designs or even this lawsuit.  Again, the Court must compare plaintiffs' requests (Docket No. 29, Kane Decl., Ex. B) with defendant's responses (id., Ex. F) and subsequent correspondence and responses to this motion.  Again, taking each disputed request as presented in the motion, as for Document Request No. 4, given the Stipulation for a Protective Order entered in this case (Docket Nos. 19, 20), defendant should produce information with documents to show profit margin for the entire POWER QUAD line (cf. Docket No. 29, Kane Decl., Ex. F, at 3-4 (defendant refusing to produce absent a Protective Order)) but defendant argues that if offered to produce these documents (with those responsive to Nos. 5 and 16) by inspection by plaintiffs have not taken up its offer (Docket No. 35, Def. Memo. at 11).  Plaintiffs do not argue why inspection is so onerous that their motion to compel should be granted (in effect, to have defendant produce copies of the items it is willing to have inspected) instead of the parties working out mutually convenient dates for inspection, see Fed. R. Civ. P. 35(a)(1) ("inspect, copy, test, or sample" documents and other listed discoverable items).  Plaintiffs' motion is **denied**; plaintiffs should accept defendant's offer of inspection.  Similarly, for Request Nos. 5 and 16, plaintiffs' remedy is accepting defendant's inspection offer; their motion to compel these productions are also **denied**.

As for Request No. 20, it reads "All documents relating to communications between Defendant and any manufacturer, seller or distributor of toys regarding the use of packaging or product configurations similar to or based on those created or used by Mattel" (Docket No. 29, Kane Decl., Ex. B). Plaintiffs seek all documents of communications between defendant and third parties regarding the similarity of defendant's toys with Mattel's (Docket No. 37, Pls. Reply Memo. at 5). While this may go to defendant's bad faith generally, the request is overbroad and plaintiffs' motion to compel its production is **denied**.

Regarding Request Nos. 23 and 38, the motion to compel these requests is also **denied**, since defendant asserts that it does not advertise and has no responsive documents on the advertising and marketing of the offending products.

As for Request No. 25, the motion to compel production of all POWER QUAD packaging materials is **granted**.

As for Request No. 36, plaintiffs seek "all documents that refer or relate to any communications with retailers regarding this lawsuit" (Docket No. 29, Kane Decl. Ex. B). Defendant originally objected on attorney-client and work product privilege grounds (see id., Ex. F) but does not identify any particular documents responsive to this demand that are from defense counsel and covered by these privileges. Plaintiffs claim that these documents are "related to Defendant's bad faith and willful infringement" (Docket No. 29, Pls. Memo. at 10). Defendant states that it has produced, for other requests, documents regarding confusion or similarity of product or packaging (Docket No. 35, Def. Memo. at 13; see Docket No. 29, Kane Decl., Ex. J, at 3). But other documents that are responsive to this demand and yet to be produced should be produced; plaintiffs' motion to compel production on this request is **granted**.

    B.    Defendant's Cross-Motion

The remaining issue is whether plaintiffs intend to withhold documents based on their objections to defendant's demands and Interrogatories and, if so, to identify the documents being withheld on those bases. Plaintiffs argue again that defendant had not sufficiently met and conferred on its "tit-for-tat" cross motion (Docket No. 37, Pl. Reply at 5-6). Defendant failed to identify which objections to specific document responses defendant took issue with (id. at 6).

Since neither side has clearly identified either (for defendant) the objections or (for plaintiffs) the documents subject to the objections and given the post-motion production by the parties, and the parties failure to conduct meaningful conference on this matter, defendant's cross motion to compel is **denied**.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to compel (Docket No. 29) is **granted in part, denied in part** as described in detail above; while defendant's cross motion to compel (Docket No. 35) **denied.**

So Ordered.

                                                           /s/ Hugh B. Scott
                                                              Honorable Hugh B. Scott
                                                               United States Magistrate Judge

Dated: Buffalo, New York
        November 4, 2008